A. M. Collins Manufacturing Company *v.* Lawrence County Bank.

Opinion delivered April 28, 1924.

1. Appeal and error—motion for directed verdict.—A motion for directed verdict by each side operates to withdraw the submission of the case from the jury and submit its decision to the court, in which case the sole question on appeal is whether the testimony is legally sufficient to support the judgment of the court.

2. Contracts—breach—evidence.—In an action for breach of a contract, evidence that plaintiff first broke the contract *held* to sustain a judgment for defendant.

Appeal from Lawrence Circuit Court, Eastern District; *Dene H. Coleman,* Judge; affirmed.

*W. P. Smith* and *Lester L. Gibson,* for appellant.

A principal cannot enter into a contract through its agent, and then, in order to breach the same, set up the defense of *ultra vires.*  77 Ark. 172; 82 Ark. 86; 68 Ark. 299; 138 Ark. 111.  A foreign corporation is not doing business within the meaning of the statute by entering into a contract with a resident of the State where the contract is made to be performed elsewhere.  55 Ark. 625; 61 Ark. 1; 196 Ark. 465.  The court erred in instructing a verdict for the defendant.    232 S. W. 582; 148 Ark. 655.

*Ponder & Gibson,* for appellee.

The parties, by requesting a peremptory instruction, assume the facts to be undisputed, and submit to the judge the determination of the inferences to be drawn therefrom.  134 Ark. 560; 136 Ark. 329; 139 Ark. 517; 138 Ark. 172; 131 Ark. 133; 134 Ark. 345; 150 Ark. 138; 155 Ark. 506.  The tender by the appellee of $94.50 in full payment and the acceptance thereof by the appellee amounted to an accord and satisfaction of appellant's claim.  1 Ruling Case Law, 196, § 32; 94 Ark. 158; 98 Ark. 269; 100 Ark. 251; 122 Ark. 212; 148 Ark. 512.

SMITH, J.   This is an action by the A. M. Collins Manufacturing Company, hereinafter referred to as the company, owner and operator of the Collins Service, against the Lawrence County Bank, for certain services based on contract.  The company is a Pennsylvania corporation, and operates a general advertising business. In July, 1921, the company and the bank entered into a written contract whereby the company agreed, for a period of eighteen months, beginning October 15, 1920, to furnish the bank certain service and material, and the bank agreed, in consideration therefor, to pay $29 cash monthly for the period of eighteen months.  The company alleged that the bank made payments as agreed for the months of October, November and December, but thereafter defaulted in the payments and repudiated the contract, whereupon the company sued for the unpaid balance.  The bank admitted the failure to make pay-

ments maturing after December, and sought to excuse this failure by showing that the company had breached the contract by failing to furnish the service and material as required by the contract.

At the conclusion of all the testimony each side asked that a verdict be directed in its favor, and neither asked any other instructions, and the court found for the defendant, and directed the jury to return a verdict in favor of the bank, and the company has appealed.

The effect of the facts stated, under numerous decisions of this court, was to withdraw the submission of the case from the jury and submit its decision to the court, and, this having been done, the appeal is to be considered by us as if the case had originally been submitted to the court without a jury, and we are required to determine the question only whether the testimony is legally sufficient to support the judgment of the court.

Under the terms of the contract the company agreed to ship to the bank certain supplies each month, and the contract provided that the shipment should be at the risk of the bank. The bank failed to receive the shipments shown to have been made in December and January, but it is insisted that the testimony clearly shows that the shipments were made, and that the bank was not absolved from its liability under the contract because of the miscarriage of the shipments.

The company agreed, however, to supply certain service through the mails in addition to the shipment of the material by freight.

The contract is quite lengthy, and specifically sets out what the service was to be, it being designated in schedules A, B, C, D, E, F, G and H. Some of the matter to make this service effective came by freight, and a portion of it was to come through the mails.

Schedule A was a business building bulletin, monthly; schedule B, the Collins Forecast, monthly. This forecast covered reports on credit, building operations, railroad earnings, bank clearings, coal output, and other information of that kind. Schedule C, emergency and

local service, on request. Schedule D, newspaper advertisements, four each month. Schedule E, business extension counsel, on request. Schedule F, government announcement window posters. Schedule G, government newspaper display advertisements—an announcement and eighteen pieces of illustrated copy, each with composition ready for printing. Schedule H was letters to be mailed to present and prospective depositors.

The cashier of the bank testified that the bank never received any of the material under schedule A, but did receive through the mail, for two or three months, service mentioned in schedule B, after which that service was not furnished. That the bank never received any material and service under schedule C, D, and E. That, under schedule F, the bank was to receive ten posters for windows, but received only two. Schedule H required the company to furnish fifty portfolios, for which the bank was to pay fifteen cents each in addition to the monthly charge of $29, and the company was to furnish a series of constructive educational messages, appearing over the signature of an officer of the bank, it being contemplated that these articles were to be placed in the portfolios furnished the customers. At the end of eighteen months the customers who had received the articles and had filed them would have what was styled a valuable booklet. Every article was related to the one next to follow, and the value of the collection depended upon the possession of all the articles in the series. This service was furnished for three months, and then discontinued.

The contract sued on is an entire one, and it was the duty of the company to furnish all the material and service called for, not only that which was to come by freight but that by mail as well, and the breach of this duty absolved the bank from liability under the contract.

On February 17, 1921, the cashier of the bank sent the company a check for $94.50, which paid for all supplies and service rendered up to January 1, 1921, and advised that, as no supplies or service had been furnished for January or February, the bank regarded the contract as

canceled. If the testimony of the cashier is credited—and that, of course, was a question for the jury—the company's breach absolved the bank from liability thereunder. This is true, although it be held that the bank was not absolved from liability because of the miscarriage of the freight shipments, as this was not the only service called for. The service which should have come through the mails was not furnished, and the judgment in the bank's favor is therefore affirmed.